**RYAN G. BURRAGE**
Webmaster - JerryRyburg.com
74 Coronado Ave
Kenner, LA 70065
504-339-1902
ryan@ryanburrage.com
*Filing Pro Se*

✓FILED ___RECEIVED
__ ENTERED__SERVED ON
COUNSEL/PARTIES OF RECORD

**2010 AUG 18 P 1: 06**

CLERK US DISTRICT COURT
DISTRICT OF NEVADA

BY_____DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Case No.: No. **2:10-cv-01283**

RIGHTHAVEN LLC, a Nevada limited-

liability company,

    vs.

JERRY RYBURG, an Individual; and, RYAN BURRAGE,

an Individual

Defendants

**RESPONSE TO COMPLAINT AND DEMAND FOR JURY TRIAL**

### PARTIES

1.    Defendant("RYAN BURRAGE") is the sole owner of the website in question, JerryRyburg.com, and is the only legitimate defendant in this lawsuit. "JERRY RYBURG," the other defendant mentioned in the Plaintiff's original complaint, is not a real person. "JERRY RYBURG" is the *nom de plum* of the defendant and is not a separate person. Therefore, RYAN BURRAGE and JERRY RYBURG are one and the same individual.

2.    The Defendant established the website by purchasing the domain name "JerryRyburg.com" in November of 2010 from GoDaddy.com. Additionally, private registration for the domain name was purchased through GoDaddy's private registration entity, DOMAINS BY PROXY, INC. This was done to inhibit the publication of personal details on the internet.

3.   No other party other than this Defendant, RYAN BURRAGE, has anything to do with the operation and management of the contents and materials on JerryRyburg.com.

**JURISDICTION**

4.   On or about May 26, 2010, the Defendant did republish an article entitled "TSA Keeps Watchlist of Peeved Travelers," authored by Sherman Fredrick of the Las Vegas Review Journal("LVRJ").

5.   The article in question was not published by the Defendant directly, as it was automatically syndicated through Real Simple Syndication(RSS). The source of the RSS Feed was infowars.com and prisonplanet.com. Therefore, the original publisher, LVRJ, was syndicated to infowars.com and prisonplanet.com, which was then automatically syndicated on JerryRyburg.com.

6.   The originator of the material, LVRJ, was credited at all times, up to and including a link back to the original source, LVRJ.com.

7.   At all times, the Defendant had proper means to be contacted in the event of any copyright infringement and/or other concerns.

8.   On or about July 23, 2010, the Defendant was contacted via email purported to be from Domains by Proxy, Inc, stating that there was a possible legal issue regarding the domain name, JerryRyburg.com. Erroneously believing the email to be a common "phishing" scam, the defendant ignored the email completely. See EXHIBIT D.

9.   On or about July 23, 2010, and independent of this lawsuit, the Defendant had already completely deleted all content on JerryRyburg.com to explore a new subjective format to the website. The website is still under construction as of present.

**FACTS**

10.   The Defendant owns and operated a website which aggregated news stories and offered original commentary, mostly on news stories which were already common knowledge. Original commentary and original editorials on popular news stories were frequent and were written from a libertarian, constitutionalist standpoint. In addition, many stories were automatically syndicated, as mentioned before, through RSS feeds of news sites and/or blogs. It is common practice on the internet for news sites and blogs to encourage users to "subscribe" to their respective RSS Feeds.

11.   At no time was it the intent of the Defendant to defraud, cause harm, misrepresent, intercept website traffic, profit, or exploit the LVRJ, LVRJ.com, or its related stories. It was also not the intent of the

Defendant to allegedly infringe upon the copyrights of the works of others.  As a writer himself, the Defendant is committed to the enforcement of copyright laws in the United States of America.

12. At no time were any stories published where the Defendant claimed authorship for a work he did not originally create.  In the cases where stories were republished from RSS feeds, the original source and author were cited, and a "backlink" was provided to the original websites.

13. The Plaintiff seems to argue that because content originating from LVRJ, originating from the state of Nevada, was republished on JerryRyburg.com, that the State of Nevada was the focal target of the website.  If this were the case, then this would necessarily be the justification in using THE UNITED STATES DISTRICT COURT OF NEVADA as the trial venue.  If a trial is so warranted, a change of venue is hereby requested, and the location of such a trial should be held in New Orleans, LA, where the Defendant owns and operates the website in question.

14. Certainly, the Defendant does not and will not forbid or target certain states to view his website.  It is not the function of any website to willingly turn away or block traffic from specific regions of the country or the world without valid concern – this would be constituted as unmerited discrimination.  In the event that a user from the state of Nevada did visit JerryRyburg.com, he/she did so by their own volition.

15. Although the Plaintiff makes assertions that the republishing of the LVRJ story infringes copyright, it is the opinion of the Defendant that his use of the article fell under the "fair use" clause of copyright law and the Digital Millennium Copyright Act(DMCA).  In addition, it is not altogether uncommon for news articles to be reprinted by other entities, up to and including competing news agencies.  This practice holds true in print, broadcast, and digital(internet) media.

16. Although the Plaintiff makes assertions that the republishing of the LVRJ story on JerryRyburg.com has harmed the original source, the facts simply do not substantiate the claim.  In fact, contrary to the Plaintiff's claim, linking to the original source("backlinking") is a form of promotion for the original source which improves, not harms, a websites ranking in the search engines.  Please refer to EXHIBIT A.  According to Alexa.com, a website which ranks other websites, Lvrj.com has a three-month global Alexa traffic rank of 8,812 with 4,218 sites linking in.  This is a very desirable ranking.  On the other hand, JerryRyburg.com has an Alexa Traffic Rank of 14,449,934 with only one website linking in.  This would indicate that even if a user was to search for a specific LVRJ.com article in a search engine, the

LVRJ.com website would be returned in the top results.  Backlinks provide authority to a website. When the Defendant and others linked to this particular LVRJ story, all sites linking to LVRJ.com added authority to LVRJ.com and boosted its search engine rankings.

17.   The Defendant's website had, on average, only 285 unique visitors in the time specified by the Plaintiff.  In addition, the Defendant's website averaged less than 2,500 page views in the time specified by the Plaintiff. Please refer to EXHIBIT B.

18.   While JerryRyburg.com did indeed have opportunities to generate income through the use of Google Adsense and other Cost-Per-Acquisition or Cost-Per-Action offers, no income can be connected directly to JerryRyburg.com.  Even more difficult, the republishing of the article on JerryRyburg.com cannot be connected to any income in and of itself.  There are no ways to prove or disprove that any income was generated as a result of republishing the specific LVRJ story in question.

19.   It is the Plaintiff's assertion that the Defendant is guilty of copyright infringement between the times of May 26, 2010 to July 23, 2010.  However, by the Plaintiff's own sworn admission, he did not own the copyright to the said article until July 14, 2010.  This would indicate that the Defendant is guilty of alleged copyright infringement for a 9 day period, July 14, 2010 to July 23, 2010.  The original complaint should therefore be amended as such.  Refer to Plaintiff's EXHIBIT 4.

20.   Taking into account the structure and nature of the Plaintiff's legal complaint, the actual damages, if any, suffered by the plaintiff cover only a 9 day period, and they amount to nothing more than printing the article from the website and sharing it with coworkers in a typical office environment.  It is also the equivalent of a passer-by stopping in front of a newsstand and reading the front page of the newspaper, without actually buying the newspaper.

21.   Even if the Defendant was to republish an article from the LVRJ.com website directly, he is not only within his rights do so, but all users of LVRJ.com are encouraged to do just that.  Refer to EXHIBIT C. The LVRJ.com website offers and invites its users to "Save and Share" all of its articles no less than 19 times per article.  In addition, LVRJ.com encourages and invites its users to "Email This," "Save This," "Print This," and subscribe to its "RSS feeds."  This not only puts the users of LVRJ.com in a quagmire, but it is the opinion of the Defendant that LVRJ.com is guilty of entrapment, or at least setting up the users of the LVRJ.com for a potential lawsuit.  While the LVRJ.com encourages and invites its users to "Share and Save" articles a total of 23 times per article, the LVRJ.com will file a frivolous copyright

1    infringement lawsuit against its users, if they follow LVRJ's directions and invitations to "Share and

2    Save" articles published on their website.

3    22.   The Plaintiff asserts in the original complaint that the "Defendants did not seek permission, in any

4    manner, to reproduce, display, or otherwise exploit the Work," and "The Defendants were not granted

5    permission, in any manner, to reproduce, display, or otherwise exploit the work, section 20 of this

6    response indicates and proves otherwise.  Even though the Defendant did not directly publish the work

7    from LVRJ.com, and it was indirectly published through RSS syndication, the Defendant was still under

8    his right to republish the article, as evidenced by the total of 23 invitations to do so on the original

9    source website, LVRJ.com.  Refer to EXHIBIT C.  These invitations and encouragements to "Save and

10    Share" the article absolve the Defendant from the need to "seek permission" and/or have permission

11    granted from LVRJ to "reproduce, display, or otherwise exploit the Work."

12    23.   It is the opinion of the Defendant that this lawsuit is entirely predatory, frivolous, and an abuse of the

13    United States Justice System.  While the defendant acknowledges that the Plaintiff is not bound by law

14    to issue a "cease and desist" letter when alleged infringement is found, it is the common legal etiquette

15    and and process to begin with a "cease and desist" letter.  Had such a "cease and desist" order been

16    offered, the Defendant would have cooperated and obliged accordingly.  The opinion of the Defendant is

17    that in not issuing a "cease and desist" order prior to filing this lawsuit, the Plaintiff's sudden filing of a

18    lawsuit alleging copyright infringement is unethical, immoral, improper, and indicates a suspicious

19    motivation to do so.  In addition, the opinion of the Defendant is that the actions of the Plantiff are

20    exactly what gives "trial lawyers" a bad name.

21    24.   It is the opinion of the Defendant the Plaintiff is engaged in a shakedown or extortion operation, with

22    the express purpose of abusing the legal system to extort or shakedown webmasters and bloggers who

23    republish content from the LVRJ in accordance with "fair use" and DMCA.  In the majority of cases,

24    including that of the Defendant, victims of the Plaintiff's witch hunt are bloggers and webmasters who

25    generate very little revenue, if any, from their sites.  At the current rate of lawsuits being filed against

26    webmasters by this Plaintiff, THE UNITED STATES DISTRICT COURT OF NEVADA will necessarily be

27    clogged and bogged down with many similar lawsuits.  The Plaintiff is operating with expectation that

28    the victims of his "copyright trolling" operation will settle out of court, rather than absorb the costs of

fighting this matter.  This is simply an effort by the Plaintiff, Righthaven, LLC, in collusion with the

LVRJ, to extort settlements for allegedly minor infringements from unsuspecting webmasters and bloggers who lack the means and funds to fight such a frivolous lawsuits.  In these cases, many bloggers and webmasters will choose to pay the settlement in lieu of the ridiculous statutory damage claims by the Plaintiff.

25.

Dated this 9th day of August, 2010

_____

**RYAN G.BURRAGE**
Webmaster - JerryRyburg.com
74 Coronado Ave
Kenner, LA 70065
504-339-1902
ryan@ryanburrage.com, therhythmakers@yahoo.com
*Filing Pro Se*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

|  |  |
|---|---|
|  | Case No.: No. **2:10-cv-01283** |
| RIGHTHAVEN LLC, a Nevada limited-liability company, | **RESPONSE TO COMPLAINT AND DEMAND FOR JURY TRIAL** |
| vs. | |
| JERRY RYBURG, an Individual; and, RYAN BURRAGE, an Individual | |
| Defendants | |

## PARTIES

1.    Defendant("RYAN BURRAGE") is the sole owner of the website in question, JerryRyburg.com, and is the only legitimate defendant in this lawsuit. "JERRY RYBURG," the other defendant mentioned in the Plaintiff's original complaint, is not a real person. "JERRY RYBURG" is the *nom de plum* of the defendant and is not a separate person. Therefore, RYAN BURRAGE and JERRY RYBURG are one and the same individual.

2.    The Defendant established the website by purchasing the domain name "JerryRyburg.com" in November of 2010 from GoDaddy.com. Additionally, private registration for the domain name was purchased through GoDaddy's private registration entity, DOMAINS BY PROXY, INC. This was done to inhibit the publication of personal details on the internet.

3.     No other party other than this Defendant, RYAN BURRAGE, has anything to do with the operation and management of the contents and materials on JerryRyburg.com.

**JURISDICTION**

4.     On or about May 26, 2010, the Defendant did republish an article entitled "TSA Keeps Watchlist of Peeved Travelers," authored by Sherman Fredrick of the Las Vegas Review Journal("LVRJ").

5.     The article in question was not published by the Defendant directly, as it was automatically syndicated through Real Simple Syndication(RSS). The source of the RSS Feed was infowars.com and prisonplanet.com. Therefore, the original publisher, LVRJ, was syndicated to infowars.com and prisonplanet.com, which was then automatically syndicated on JerryRyburg.com.

6.     The originator of the material, LVRJ, was credited at all times, up to and including a link back to the original source, LVRJ.com.

7.     At all times, the Defendant had proper means to be contacted in the event of any copyright infringement and/or other concerns.

8.     On or about July 23, 2010, the Defendant was contacted via email purported to be from Domains by Proxy, Inc, stating that there was a possible legal issue regarding the domain name, JerryRyburg.com. Erroneously believing the email to be a common "phishing" scam, the defendant ignored the email completely. See EXHIBIT D.

9.     On or about July 23, 2010, and independent of this lawsuit, the Defendant had already completely deleted all content on JerryRyburg.com to explore a new subjective format to the website. The website is still under construction as of present.

**FACTS**

10.     The Defendant owns and operated a website, JerryRyburg.com, which aggregated news stories and offered original commentary, mostly on news stories which were already common knowledge. Original commentary and original editorials on popular news stories were frequent and were written from a libertarian, constitutionalist standpoint. In addition, many stories were automatically syndicated, as mentioned before, through RSS feeds of news sites and/or blogs. It is common practice on the internet for news sites and blogs to encourage users to "subscribe" to their respective RSS Feeds.

11.     At no time was it the intent of the Defendant to defraud, cause harm, misrepresent, intercept website traffic, profit, or exploit the LVRJ, LVRJ.com, or its related stories. It was also not the intent of the

Defendant to allegedly infringe upon the copyrights of the works of others. As a writer himself, the

Defendant is committed to the enforcement of copyright laws in the United States of America.

12. At no time were any stories published where the Defendant claimed authorship for a work he did not

originally create. In the cases where stories were republished from RSS feeds, the original source and

author were cited, and a "backlink" was provided to the original websites.

13. The Plaintiff seems to argue that because content originating from LVRJ, originating from the state of

Nevada, was republished on JerryRyburg.com, that the State of Nevada was the focal target of the

website. If this were the case, then this would necessarily be the justification in using THE UNITED

STATES DISTRICT COURT OF NEVADA as the trial venue. If a trial is so warranted, a change of venue

is hereby requested, and the location of such a trial should be held in New Orleans, LA, where the

Defendant owns and operates the website in question.

14. Certainly, the Defendant does not and will not forbid or target certain states to view his website. It is

not the function of any website to willingly turn away or block traffic from specific regions of the country

or the world without valid concern – this would be constituted as unmerited discrimination. In the

event that a user from the state of Nevada did visit JerryRyburg.com, he/she did so by his/her own

volition.

15. Although the Plaintiff makes assertions that the republishing of the LVRJ story infringes copyright, it is

the opinion of the Defendant that his use of the article fell under the "fair use" clause of copyright law

and the Digital Millennium Copyright Act(DMCA). In addition, it is not altogether uncommon for news

articles to be reprinted by other entities, up to and including competing news agencies. This practice

holds true in print, broadcast, and digital(internet) media.

16. Although the Plaintiff makes assertions that the republishing of the LVRJ story on JerryRyburg.com has

harmed the original source, the facts simply do not substantiate the claim. In fact, contrary to the

Plaintiff's claim, linking to the original source("backlinking") is a form of promotion for the original

source which improves, not harms, a websites ranking in the search engines. Please refer to *EXHIBIT*

*A.* According to Alexa.com, a website which ranks other websites, Lvrj.com has a three-month global

Alexa traffic rank of 8,812 with 4,218 sites linking in. This is a very desirable ranking. On the other

hand, JerryRyburg.com has an Alexa Traffic Rank of 14,449,934 with only one website linking in. This

would indicate that even if a user was to search for a specific LVRJ.com article in a search engine, the

LVRJ.com website would be returned in the top results before JerryRyburg.com would appear. Backlinks provide authority to a website. When the Defendant and others linked to this particular LVRJ story, all sites linking to LVRJ.com added authority to LVRJ.com and boosted its search engine rankings.

17. The Defendant's website had, on average, only 285 unique visitors in the time specified by the Plaintiff. In addition, the Defendant's website averaged less than 2,500 page views in the time specified by the Plaintiff. Please refer to **EXHIBIT B.**

18. While JerryRyburg.com did indeed have opportunities to generate income through the use of Google Adsense and other Cost-Per-Acquisition or Cost-Per-Action offers, no income can be connected directly to JerryRyburg.com. Even more difficult, the republishing of the article on JerryRyburg.com cannot be connected to any income in and of itself. There are no ways to prove or disprove that any income was generated as a result of republishing the specific LVRJ story in question.

19. It is the Plaintiff's assertion that the Defendant is guilty of copyright infringement between the times of May 26, 2010 to July 23, 2010. However, by the Plaintiff's own sworn admission, he did not own the copyright to the said article until July 14, 2010. This would indicate that the Defendant is guilty of alleged copyright infringement for a 9 day period, July 14, 2010 to July 23, 2010. The original complaint should therefore be amended as such. Refer to Plaintiff's **EXHIBIT 4.**

20. Taking into account the structure and nature of the Plaintiff's legal complaint, the actual damages, if any, suffered by the Plaintiff cover only a 9 day period, and they amount to nothing more than printing the article from the website and sharing it with coworkers in a typical office environment. It is also the equivalent of a passer-by stopping in front of a newsstand and reading the front page of the newspaper, without actually buying the newspaper.

21. Even if the Defendant was to republish an article from the LVRJ.com website directly, he is not only within his rights do so, but all users of LVRJ.com are encouraged to do just that. Refer to **EXHIBIT C.** The LVRJ.com website offers and invites its users to "Save and Share" all of its articles no less than 19 times per article. In addition, LVRJ.com encourages and invites its users to "Email This," "Save This," "Print This," and subscribe to its "RSS feeds." This not only puts the users of LVRJ.com in a quagmire, but it is the opinion of the Defendant that LVRJ.com is guilty of entrapment, or at least setting up the users of the LVRJ.com for a potential lawsuit. While the LVRJ.com encourages and invites its users to

-4-

1    "Share and Save" articles a total of 23 times per article, the LVRJ.com will file a frivolous copyright

2    infringement lawsuit against its users, if they follow LVRJ's directions and invitations to "Share and

3    Save" articles published on their website.

4  22.  The Plaintiff asserts in the original complaint that the "Defendants did not seek permission, in any

5    manner, to reproduce, display, or otherwise exploit the Work," and "The Defendants were not granted

6    permission, in any manner, to reproduce, display, or otherwise exploit the work." Section 21 of this

7    response indicates and proves otherwise. Even though the Defendant did not directly publish the work

8    from LVRJ.com, and it was indirectly published through RSS syndication, the Defendant was still under

9    his right to republish the article, as evidenced by the total of 23 invitations to do so on the original

10   source website, LVRJ.com. Refer to **EXHIBIT C.** These invitations and encouragements to "Save and

11   Share" the article absolve the Defendant from the need to "seek permission" and/or have permission

12   granted from LVRJ to "reproduce, display, or otherwise exploit the Work."

13 23.  It is the opinion of the Defendant that this lawsuit is entirely predatory, frivolous, and an abuse of the

14   United States Justice System. While the defendant acknowledges that the Plaintiff is not bound by law

15   to issue a "cease and desist" letter when alleged infringement is found, it is the common legal etiquette

16   and process to begin with a "cease and desist" letter. Had such a "cease and desist" order been offered,

17   the Defendant would have cooperated and obliged accordingly. The opinion of the Defendant is that in

18   not issuing a "cease and desist" order prior to filing this lawsuit, the Plaintiff's sudden filing of a lawsuit

19   alleging copyright infringement is unethical, immoral, improper, and indicates a suspicious motivation

20   to do so. In addition, the opinion of the Defendant is that the actions of the Plantiff are exactly what

21   gives "trial lawyers" a bad name. In the event that the Plaintiff and/or LVRJ are not familiar with the

22   format of a "cease and desist" letter, I have provided a template for their use. Refer to **EXHIBIT F.**

23 24.  It is the opinion of the Defendant the Plaintiff is engaged in a shakedown or extortion operation, with

24   the express purpose of abusing the legal system to extort or shakedown webmasters and bloggers who

25   republish content from the LVRJ in accordance with "fair use" and DMCA. In the majority of cases,

26   including that of the Defendant, victims of the Plaintiff's witch hunt are bloggers and webmasters who

27   generate very little revenue, if any, from their sites. At the current rate of lawsuits being filed against

28   webmasters by this Plaintiff, THE UNITED STATES DISTRICT COURT OF NEVADA will necessarily be

clogged and bogged down with many similar lawsuits. The Plaintiff is operating with expectation that

the victims of his "copyright trolling" operation will settle out of court, rather than absorb the costs of fighting this matter. This is simply an effort by the Plaintiff, Righthaven, LLC, in collusion with the LVRJ, to extort settlements for allegedly minor infringements from unsuspecting webmasters and bloggers who lack the means and funds to fight such frivolous lawsuits. In these cases, many bloggers and webmasters will choose to pay the settlement in lieu of the ridiculous statutory damage claims by the Plaintiff.

## OFFER FOR SETTLEMENT

25. The Defendant did indeed publish an article on his website entitled "TSA Keeps Watchlist of Peeved Travelers," and the copyright for the said article was granted to the Plaintiff on July 14, 2010. The Defendant republished the article under the impression that in providing reciprocal links and crediting the original source, his republishing of the article constituted "fair use" under the copyright laws of the USA and DMCA. Without admitting any improper activities or malicious intent, the Defendant offers to settle this lawsuit for the sum of $10.87. The sum amount constitutes Google Adsense revenue of $7.92 generated on or about the dates of July 14, 2010 – July 23, 2010(refer to ***EXHIBIT E***), plus the $2.95 that the LVRJ charges to access and gain rights to an archived article. Upon acceptance of settlement, the Defendant also ensures the Plaintiff that he will not use or refer to any material published in the LVRJ or anything else which belongs to the Plaintiff.

## PRAYER

26. In the event that the Plaintiff does not accept the offer for settlement in section 25 of this document, then the Defendant respectfully requests that the Court dismiss this lawsuit without prejudice. If the Plaintiff fails to make a counter-offer or persists in having a trial by jury, the Defendant still requests that this lawsuit be dismissed without prejudice. The burden of proof, in this case, is on the Plaintiff. Seeing that the Plaintiff made no efforts whatsoever to resolve this issue before filing this lawsuit, and seeing the evidence that the LVRJ openly and actively encourages its users to "Share and Save" its works, it is the opinion of the Defendant that the Court will side with the defense in this matter. The claims concerning damages by the Plaintiff are greatly exaggerated, not based on fact, and the facts in this case do not warrant the concern or time for this or any other Court.

Dated this 9   day of August, 2010

Ryan Burrage
74 Coronado Ave
Kenner, LA 70065
1-504-339-1902
*Filing pro se*

# EXHIBIT A

# EXHIBIT A





Alexa

Home | Top Sites | Site Info | What's Hot | Toolbar | For Site Owners

Register | Login | Help

lvrj.com
Lvrj

Search

Lvrj.com has a three-month global Alexa traffic rank of 8,812. Compared with all internet users, the site's audience tends to be over the age of 35; they are also disproportionately moderately educated, childless men earning over $60,000. The time spent in a typical visit to the site is about two minutes, with 69 seconds spent on each pageview. This site is located in the US, and about 66% of visits to Lvrj.com consist of only one pageview (i.e., are bounces).

**Is this your site?** Learn how to get more traffic with the Alexa Site Audit.

| 1 Review | 8,812 | 1,598 | 4,218 | 01-Dec-1995 |
|---|---|---|---|---|
| | Alexa Traffic Rank | Traffic Rank in US | Sites Linking In | Online Since |

Search Analytics | Audience | Contact Info | Reviews | Related Links | Clickstream

FREE Download the Alexa Toolbar
Alexa Search

# EXHIBIT B

# EXHIBIT B

**Statistics for:**
jerryryburg.com

Summary
**When:**
Monthly history
Days of month
Days of week
Hours
**Who:**
Countries
  Full list
Hosts
  · Full list
  · Last visit
  · Unresolved IP Address
Authenticated users
  · Full list
  · Last visit
Robots/Spiders visitors
  · Full list
  · Last visit
**Navigation:**
Visits duration
Viewed
File type
  · Full list
Operating Systems
  · Entry
  · Exit
  Versions
  Unknown
Browsers
  Versions
  Unknown
**Referrers:**
Origin
  Referring search engines
  Referring sites

\* Not viewed traffic includes traffic generated by robots, worms, or replies with special HTTP status codes.

## Monthly history



| Month | Number of visits | Hits | (MB) |
|---|---|---|---|
| Jan 2010 | 222 | 4536 | 223.63 MB |
| Feb 2010 | 232 | 3385 | 90.60 MB |
| Mar 2010 | 425 | 6464 | 167.88 MB |
| Apr 2010 | 187 | 4306 | 82.85 MB |
| May 2010 | 248 | 3301 | 88.61 MB |
| Jun 2010 | 278 | 3522 | 60.47 MB |
| Jul 2010 | 328 | 4460 | 65.69 MB |
| **Aug 2010** | 117 | 783 | 11.08 MB |
| Sep 2010 | 0 | 0 | 0 |
| Oct 2010 | 0 | 0 | 0 |
| Nov 2010 | 0 | 0 | 0 |

# EXHIBIT C

# EXHIBIT C



# EXHIBIT D

# EXHIBIT D

**From:** generalmanager@domainsbyproxy.com (generalmanager@domainsbyproxy.com)
**To:** therhythmakers@yahoo.com;
**Date:** Fri, July 23, 2010 9:00:27 AM
**Cc:**
**Subject:** Possible Legal Issue re: JERRYRYBURG.COM DBP CLAIM # 563876

Dear Customer,

Domains By Proxy (hereinafter "DBP") has disclosed your contact information to the party listed below, per section 4 of the Domain Name Proxy Agreementhttp://www.securepaynet.net/gdshop/legal_agreements/show_doc.asp?pageid=domain_nameproxy&prog_id=domainsbyproxy, with respect to the domain name JERRYRYBURG.COM.

DBP is not able to act on your behalf in this matter. Please be aware that if subpoenaed, DBP will provide all requested information within reason and will charge an administrative fee for the document production Please direct any questions to the complainant's representative:

J. Charles Coons, Esq.
Assistant General Counsel
RIGHTHAVEN LLC
Conquistador Business Park
9960 West Cheyenne Avenue, Suite 210
Las Vegas, NV 89129
702.527.5900 (Main)


Sincerely,

N. Kelly
Office of the General Manager
Domains By Proxy, Inc.

# EXHIBIT E

# EXHIBIT E

# Google AdSense

jerryryburg@gmail.com - Last login: 31 minutes ago - Log Out - Help
Publisher ID: pub-5362695398419770

Search AdSense Help

AdSense Setup          My Account          Resources

Advanced Reports

## Advanced Reports

Report Templates:  None  ( Learn more about Report Templates )

Link your AdSense account with Google Analytics and see reporting on your AdSense traffic. Integrate with Analytics now!

**Choose product**

AdSense for Content      [v]

Note: Advanced reports are not available for Google Affiliate Network

**Choose date range**

Today      [v]

Jul [v]  14 [v]  2010 [v]  -  Jul [v]  23 [v]  2010 [v]

* Date ranges are based on Pacific Time

**Show data by**

Page      [v]

**Show**

Aggregate data
Channel data   manage channels »

**Choose Units**
Ad Units
Link Units
Combined

## Display Report

## July 14, 2010 - July 23, 2010

Save as Report Template: Enter new name...          Save

CSV

| Totals | 1,742 | 12 | | | $7.92 |
| --- | --- | --- | --- | --- | --- |
| Date | Page impressions | Clicks | Page CTR | Page eCPM [?] | Estimated earnings |
| Wednesday, July 14, 2010 | 286 | 3 | 1.05% | $5.54 | $1.58 |
| Thursday, July 15, 2010 | 272 | 4 | 1.47% | $9.15 | $2.49 |
| Friday, July 16, 2010 | 212 | 2 | 0.94% | $4.81 | $1.02 |
| Saturday, July 17, 2010 | 131 | 1 | 0.76% | $2.08 | $0.27 |
| Sunday, July 18, 2010 | 135 | 0 | 0.00% | $0.00 | $0.00 |
| Monday, July 19, 2010 | 171 | 2 | 1.17% | $14.85 | $2.54 |
| Tuesday, July 20, 2010 | 124 | 0 | 0.00% | $0.00 | $0.00 |
| Wednesday, July 21, 2010 | 136 | 0 | 0.00% | $0.12 | $0.02 |

| | | | | | |
|---|---|---|---|---|---|
| Thursday, July 22, 2010 | 127 | 0 | 0.00% | $0.02 | $0.00 |
| Friday, July 23, 2010 | 148 | 0 | 0.00% | $0.00 | $0.00 |
| Totals | 1,742 | 12 | | | $7.92 |
| Averages | 174 | 1 | 0.69% | $4.55 | $0.79 |

AdSense Blog   AdSense Forum   Privacy Policy   Terms & Conditions   Program Policies

# EXHIBIT F

# EXHIBIT F

# SAMPLE "CEASE AND DESIST LETTER"

Dear [name]:

It has come to my attention that you have made an unauthorized use of my copyrighted work entitled [name of work] (the "Work") in the preparation of a work derived therefrom. I have reserved all rights in the Work, first published in [date], [and have registered copyright therein]. Your work entitled [name of infringing work] is essentially identical to the Work and clearly used the Work as its basis. [Give a few examples that illustrate direct copying.]

As you neither asked for nor received permission to use the Work as the basis for [name of infringing work] nor to make or distribute copies, including electronic copies, of same, I believe you have willfully infringed my rights under 17 U.S.C. Section 101 et seq. and could be liable for statutory damages as high as $150,000 as set forth in Section 504(c)(2) therein.

I demand that you immediately cease the use and distribution of all infringing works derived from the Work, and all copies, including electronic copies, of same, that you deliver to me, if applicable, all unused, undistributed copies of same, or destroy such copies immediately and that you desist from this or any other infringement of my rights in the future. If I have not received an affirmative response from you by [date give them about 2 weeks] indicating that you have fully complied with these requirements, I shall take further action against you.

Very truly yours,

[Your Name]